

PLAINTIFF'S
EXHIBIT
1

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **KAYLA ROBINSON**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **ST. LOUIS BOARD OF POLICE COMMISSIONERS,** | ) |
| | ) |
| and | ) |
| | ) |
| **ANGELA HAWKINS**, individually and in her official capacities with the St. Louis Metropolitan Police Department, | ) |
| | ) |
| and | ) |
| | ) |
| **KELLI SWINTON**, individually and in her official capacities with the St. Louis Metropolitan Police Department, | ) |
| | ) |
| and | ) |
| | ) |
| **LAWRENCE O'TOOLE**, individually and in his official capacities with the St. Louis Metropolitan Police Department, | ) |
| | ) |
| and | ) |
| | ) |
| **COLONEL D. SAMUEL DOTSON III,** individually and in his official capacities with the St. Louis Metropolitan Police Department, | ) |
| | ) |
| and | ) |

Case No.   4:17-cv-00156-PLC

**RICHARD GRAY,** in his official
capacities as a member of the St. Louis
Board of Police Commissioners,

and

**BETTYE BATTLE-TURNER,** in her
official capacities as a member of the St.
Louis Board of Police Commissioners,

and

**THOMAS J. IRWIN,** in his official
capacities as a member of the St. Louis
Board of Police Commissioners,

and

**ERWIN SWITZER,** in his official
capacities as a member of the St. Louis
Board of Police Commissioners,

and

**FRANCIS G. SLAY,** in his official
capacities as a member of the St. Louis
Board of Police Commissioners,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## <u>FIRST AMENDED COMPLAINT[1]</u>

COMES NOW Plaintiff Kayla Robinson ("Plaintiff"), by and through undersigned

counsel, and for her First Amended Complaint, states to this Honorable Court as follows:

---

[1] Plaintiff's cause of action was originally filed in state court in the Circuit Court of the City of St.
Louis as a "Petition." The cause of action has since been removed to the United States District
Court for the Eastern District of Missouri, and thus document will serve as Plaintiff's "First
Amended Complaint."

## NATURE OF THE ACTION

1.      This is a civil rights action brought under 42 U.S.C. § 1983 concerning the actions of St. Louis Metropolitan Police Department officers in unreasonably searching and using excessive and unreasonable force against Plaintiff in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The actions and conduct of the Defendant police officers are the result of a policy, practice, custom, and deliberate indifference on the part of Defendant St. Louis Board of Police Commissioners, as well as its agents acting in both the individual and official capacities.

## PARTIES

2.      Plaintiff is a female citizen of the State of Missouri, residing in St. Louis, Missouri.

3.      Defendant St. Louis Board of Police Commissioners was, at all times relevant herein, a statutorily-created entity responsible for the operation of the St. Louis Metropolitan Police Department with Defendants Richard Gray, Bettye Battle-Turner, Thomas J. Irwin, Erwin Switzer, and Francis Slay serving as members of said Board. The principal office for Defendant Board is located at 1200 Clark Avenue, St. Louis, Missouri 63103.

4.      For clarity, Defendant St. Louis Board of Police Commissioners and the St. Louis Metropolitan Police Department will hereinafter be referred to collectively as "Defendant Police."

5.      Defendant Angela Hawkins ("Defendant Hawkins") is, and was at all times relevant herein, a police officer for Defendant Police. She is sued both in her individual and official capacity.

6.      Defendant Kelli Swinton ("Defendant Swinton") is, and was at all times relevant herein, a police officer for Defendant Police. She is sued both in her individual and official capacity.

7.      Defendant Lawrence O'Toole ("Defendant O'Toole") is, and was at all times relevant herein, a police officer and lieutenant colonel for Defendant Police. He is sued both in his individual and official capacity.

8.      Defendant D. Samuel Samuel Dotson III ("Defendant Dotson") is, and was at all times relevant herein, a police officer, colonel, and chief of police for Defendant Police.  He is sued both in his individual and official capacity.

9.      At all times relevant herein, Plaintiff is under information and belief that Defendants O'Toole and Dotson had policymaking authority over the policies and procedures of Defendant Police.

10.     At all times relevant herein, Defendants Hawkins, Swinton, and O'Toole acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Plaintiff.

11.     At all times relevant herein, each Defendant police officer acted under color of state law prescribed to them.

## JURISDICTION AND VENUE

12.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

13.     Plaintiff's cause of action is brought pursuant to 42 U.S.C. § 1983 and thus implicates the Constitution of the United States. Therefore, this Court has original jurisdiction under 28 U.S.C. § 1331.

14.     Plaintiff's cause of action arises out of conduct that took place in the City of St. Louis, State of Missouri, and thus venue is proper in this Court under 28 U.S.C. § 1441(a).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15.     The allegations contained within all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

16.     On or about the night of October 19, 2012, Plaintiff was the front-seat passenger in a vehicle driven by the father of her children, Ronnell Jenkins (hereinafter sometimes referred to as "Jenkins"). Jenkins' brother, Richard Jones (hereinafter sometimes referred to as "Jones"), was also traveling in the vehicle and was the back-seat passenger.

17.     At the aforementioned date and time, Plaintiff, Jenkins, and Jones were leaving a St. Louis Cardinals baseball game and traveling on Goodfellow Boulevard in the City of St. Louis heading towards Jenkins' and Jones' great-grandmother's home.

18.     As Jenkins was traveling on Goodfellow Boulevard heading towards Natural Bridge Road, police lights came on in a vehicle traveling behind them. As such, Jenkins immediately pulled over to the side of the road.

19.     After pulling over, several police vehicles approached Jenkins' vehicle from every direction. Several police officers left said police vehicles and approached Jenkins' vehicle with their guns drawn.

20.     Seeing the officers with their guns drawn, Plaintiff, Jenkins, and Jones all put their hands up in the air so as to show the officers that they were unarmed and not a threat to the officers.

21.     Plaintiff, Jenkins, and Jones were all immediately forcibly removed from the vehicle by the police officers and taken to the street's curb. After initially being placed on the curb, Plaintiff turned over a small bag of marijuana to one of the officers. This was the only illegal substance or object Plaintiff had possession of at the time of the police encounter, which she immediately and voluntarily gave to the officers.

22.     After Plaintiff, Jenkins, and Jones were removed from the vehicle, the vehicle was searched. Each of the individuals were also searched as soon as they were removed from the vehicle and placed on the curb.

23.     Plaintiff's shoes were immediately removed upon being placed on the curb, and she was searched by Defendant Hawkins.

24.     After initially searching Plaintiff, Defendant Hawkins falsely claimed that she saw Plaintiff "put something in her pants" and put Plaintiff in handcuffs and pulled Plaintiff approximately 200 feet away to a nearby tractor trailer parking lot.

25.     Upon entering the tractor trailer parking lot, Defendant Hawkins pushed Plaintiff up against a parked trailer and told Plaintiff that she was going to search Plaintiff's pants.

26.     Plaintiff became extremely threatened and fearful and began to plead with Defendant Hawkins not to search her in the parking lot, but rather at the police station.

27.     Defendant Hawkins responded by becoming angry and screaming vulgar and degrading comments at Plaintiff, including, but not limited to:

     a.   Calling Plaintiff a "crack head" because "she lives in Overland (a north St. Louis County municipality)";

     b.   Continuously calling Plaintiff a "bitch"; and

     c.   Telling Plaintiff that she was "going to have her children taken away from her" and that she would "never be able to finish school once [Defendant Hawkins] found heroin on [Plaintiff]."

28.     Upon shoving Plaintiff against the parked trailer, Defendant Hawkins demanded that Plaintiff tell her "where the dope and guns were."

29.     Plaintiff insisted she had never so much as seen heroin in her life and did not have any guns.

30.     Defendant Hawkins then called another officer over her radio and asked for a pair of gloves because she was going to search Plaintiff right then and there.

31.     Shortly thereafter, a male police officer pulled his police vehicle directly behind Plaintiff and Defendant Hawkins, and he handed Defendant Hawkins a pair of

gloves. The male officer then walked back to his car and stood right next to the front door, watching Defendant Hawkins search Plaintiff.

32.     Defendant Hawkins put the gloves on, turned Plaintiff around so as to face the male officer, and began unbuttoning Plaintiff's pants. At this time, Plaintiff was crying hysterically and begging Defendant Hawkins to take her to jail and search her there.

33.     Defendant Hawkins instead forced Plaintiff to bend over and placed her fingers inside Plaintiff's vagina.

34.     After finding no drugs on Plaintiff during the course of this unreasonable and unlawful search, Defendant Hawkins fastened Plaintiff's pants and slammed her with excessive force into the parked trailer. Defendant Hawkins then tightened Plaintiff's handcuffs to an extent that Plaintiff's skin was cut and began screaming at Plaintiff, calling her a "stupid bitch."

35.     Plaintiff then began to have a panic attack and started struggling to breathe as Defendant Hawkins escorted Plaintiff back towards Jenkins' vehicle.

36.     Approximately halfway between the tractor trailer parking lot and Jenkins' vehicle, Defendant Hawkins stopped and bent over, pretending to pick something up off the ground.

37.     Defendant Hawkins then began screaming and yelling at Plaintiff once again, accusing Plaintiff of possessing whatever item Defendant Hawkins allegedly picked up off the ground.

38.     Plaintiff opposed Defendant Hawkins' notion, stating that she had already been thoroughly searched without finding any illegal objects.

39.     Defendant Hawkins then threw Plaintiff into the back of a police vehicle in which Defendant Swinton was sitting.

40.     Defendant Swinton began yelling at Plaintiff and accused her of "having dope."

41.     Defendant Swinton told Plaintiff to confess to "having dope," and the officers would let her go and, instead, arrest Jenkins for possession of illegal drugs.

42.     Plaintiff refused to confess to possessing dope and insisted that she did not have any drugs in her possession, nor had she ever so much as seen heroin.

43.     Defendant Hawkins then came back to the police vehicle and again told Plaintiff to "just tell her it was [Jenkins'] dope" and she would allow Plaintiff to drive home.

44.     Defendant Hawkins then began questioning Plaintiff about Jones, stating that Jones was lying about his name. Plaintiff insisted that this accusation was not true and that "Richard Jones" was his real name.

45.     Defendant Hawkins became angry and stated that "they all (Plaintiff, Jenkins, and Jones) were going to jail," and that Plaintiff would be charged with possession of cocaine, despite the fact that she did not possess cocaine.

46.     Shortly thereafter, Plaintiff was transported to jail where she was questioned by some male police officers.

47.     During the course of questioning, Plaintiff suffered another anxiety attack which caused her to vomit. One of the officers then stated that Plaintiff "must be high on something" if she was vomiting. Plaintiff insisted she was not.

48.     Plaintiff was then taken to an interview room and seated at a table across from Defendant Swinton.

49.     Defendant Swinton began yelling at Plaintiff, demanding to know where she got the drugs. During the course of the interview, Defendant Swinton attempted to coerce Plaintiff into writing a statement that the drugs belonged to Jenkins.

50.     Plaintiff again insisted she did not have any drugs and refused to sign a statement incriminating Jenkins.

51.     Plaintiff then informed Defendant Swinton of Defendant Hawkins' actions during the course of the aforementioned "search." Plaintiff also put this information in a written statement which she turned in to Defendant Swinton.

52.     After turning the statement in to Defendant Swinton, Plaintiff informed Defendant Swinton that she wanted a lawyer.

53.     Defendant Swinton ignored Plaintiff's request for an attorney and read Plaintiff's statement. Defendant Swinton then began laughing, telling Plaintiff she was "stupid" and "going to end up dead."

54.     Defendant Swinton then began yelling and cursing at Plaintiff once again, to which Plaintiff responded by again requesting an attorney and medical care for the injuries she suffered as a result of Defendant Hawkins' "search."

55.     Defendant Swinton responded by telling Plaintiff that her lawyer "can't help her" and that "he isn't Jesus."

56.     Shortly thereafter, Plaintiff was informed that she was being arrested for possession of marijuana and crack cocaine. Plaintiff was then transferred to the City of St. Louis Justice Center at about 3:00 am on October 20, 2012.

57.     During the intake process at the Justice Center, Plaintiff saw a doctor and informed her of the details surrounding the abuse she suffered at the hands of Defendant Hawkins. Plaintiff was informed that her report of abuse would be documented.

58.     Plaintiff was finally released, pending a warrant, at approximately 11:00 a.m. on October 20, 2012.

59.     Shortly after being released, Plaintiff went to SLMPD's Internal Affairs Department and filed a report detailing Defendant Hawkins' actions.

60.     As part of her Internal Affairs' report, Plaintiff was interviewed by Defendant O'Toole. During the interview, Defendant O'Toole asked Plaintiff to identify the officer that assaulted her in a photo book containing pictures of various Defendant Police officers.

61.     Plaintiff correctly identified Defendant Hawkins as the perpetrator. Defendant O'Toole responded by attempting to coerce Plaintiff into thinking she had identified the wrong officer.

62.     Defendant O'Toole asked Plaintiff "how she could be so sure" that she had identified the correct officer. Defendant O'Toole also stated that Defendant Hawkins' name was not on Plaintiff's arrest report, implying that Defendant Hawkins could not have been the perpetrator. Plaintiff stated that Defendant Hawkins was definitely the perpetrator.

11

63.     After the interview, Defendant O'Toole informed Plaintiff that he was going to investigate the incident and that Plaintiff would be notified of the outcome of the investigation within three (3) months.

64.     Defendant O'Toole also attempted to get a DNA sample from Plaintiff, which Plaintiff declined.

65.     Defendant O'Toole never notified Plaintiff of the results of the Internal Affairs investigation.

66.     It was not until approximately October 12, 2015, almost three (3) years after the incident, that Plaintiff was informed of the outcome of the Internal Affairs investigation, and Plaintiff was only informed because she personally called Internal Affairs to request the disposition of the investigation as part of her *pro se* attempt to expunge her arrest record.

67.     Upon contacting Internal Affairs, Plaintiff was informed that her allegations against Defendant Hawkins were sustained. The report did not detail whether or not any disciplinary actions were taken against Defendant Hawkins.

68.     During her *pro se* efforts to expunge her arrest record, Plaintiff obtained the incident report from the night of her arrest. Plaintiff noticed several pieces of false information in the incident report, including, but not limited to:

   a.  The incident report stating that Plaintiff suffered no injuries on the night of her arrest; and

   b.  The incident report stating that Plaintiff failed to give a written statement or report the events on the night of her arrest.

69.     Plaintiff was never officially charged with any crime stemming from the events on the night of her arrest.

70.     Plaintiff's arrest record has since been expunged.

71.     At no time during the events described above, particularly during the physical encounter with Defendant Hawkins, did Plaintiff use any force against Defendant Hawkins or any other police officer or do anything that would have provided Defendant Hawkins with any legal basis to use force against her.

72.     As a result of Defendant Hawkins' use of force against and unreasonable search and seizure of Plaintiff, Plaintiff suffered physical injuries and severe mental and emotional trauma.

73.     There was no legal cause to justify the search of Plaintiff, and the search of Plaintiff was unreasonable.

74.     There was no legal cause to justify the use of force against Plaintiff, and the force used against Plaintiff was unreasonable and excessive.

75.     At all times relevant to this Petition, the conduct of Defendants was a willful, reckless, and malicious disregard of Plaintiff's rights under federal and state law.

76.     Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

77.     As a direct and proximate result of the conduct of all Defendants, Plaintiff has suffered – and continues to suffer – physical and psychological harm, pain and

suffering, personal humiliation, garden variety emotional distress, and other related compensatory damages.

**COUNT I:**
**UNREASONABLE SEARCH IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS, COGNIZABLE UNDER 42 U.S.C. § 1983**
*As to Defendant Hawkins*

78.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

79.   Defendant Hawkins' actions violated Plaintiff's rights under the Fourth Amendment to be free from unreasonable searches, including, but not limited to, the following:

   a.   Defendant Hawkins, through her conduct described herein, subjected Plaintiff to a "strip search" and "body cavity search";

   b.   Defendant Hawkins' strip search of Plaintiff was done in public in front of a male police officer;

   c.   Defendant Hawkins' strip search was not done in an effort to minimize emotional and physical trauma, as it was done in an abusive manner and in a place capable of exciting more fear onto Plaintiff;

   d.   Defendant Hawkins' body cavity search of Plaintiff was done in public in front of a male police officer;

   e.   Defendant Hawkins' body cavity search was not done in an effort to minimize emotional and physical trauma, as it was done in an abusive manner and in a place capable of exciting more fear onto Plaintiff;

14

    f.   Defendant Hawkins' body cavity search was not done in a medically approved manner;

    g.   Defendant Hawkins did not have probable cause to engage in a strip search or body cavity search of Plaintiff;

    h.   Defendant Hawkins did not have a search warrant authorizing her to perform a strip search or body cavity search of Plaintiff; and

    i.   There were no exigent circumstances or other exceptions to the warrant requirement justifying Defendant Hawkins' warrantless strip search and body cavity search.

80.    Defendant Hawkins had no legal cause to justify her strip search and body cavity search of Plaintiff, and the search of Plaintiff was not reasonably necessary to arrest Plaintiff, take Plaintiff into custody, or stop Plaintiff for investigation.

81.    Defendant Hawkins was acting under color of state law prescribed to her and/or pursuant to policies, customs, and/or practices of Defendant Police in her actions described herein.

82.    As a direct and proximate result of the conduct of Defendant Hawkins, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

83.    As shown by the foregoing, Defendant Hawkins' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive

damages in an amount sufficient to punish Defendant and/or deter her and others similarly situated from such conduct in the future.

84.    Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendant Hawkins and Defendant Police.

85.    Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT II:**
**THE UNLAWFUL USE OF EXCESSIVE FORCE IN VIOLATION OF THE**
**FOURTH AND FOURTEENTH AMENDMENTS,**
**COGNIZABLE UNDER 42 U.S.C. § 1983**
***As to Defendant Hawkins***

86.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

87.    Defendant Hawkins' actions violated Plaintiff's rights under the Fourth Amendment to be free from the unlawful use of excessive force, including, but not limited to, the following:

        a.   Defendant Hawkins forced Plaintiff to bend over, in public and in front of a male police officer, pulled Plaintiff's pants down, and put her fingers inside Plaintiff's vagina;

16

b.  Defendant Hawkins slammed Plaintiff into a parked tractor trailer while Plaintiff was in handcuffs; and

c.  Defendant Hawkins tightened Plaintiff's handcuffs to an extent that Plaintiff's skin was cut.

88.  At no time during Defendant Hawkins' encounter with Plaintiff did Plaintiff use any force against Defendant Hawkins or any other police officer, nor did Plaintiff threaten to use force, nor did Plaintiff do anything that would have provided Defendant Hawkins a legal basis for using force against her.

89.  Defendant Hawkins had no legal cause to justify the use of force against Plaintiff, and the force used against Plaintiff was excessive and not reasonably necessary to arrest Plaintiff, take Plaintiff into custody, or stop Plaintiff for investigation.

90.  Defendant Hawkins was acting under color of state law prescribed to her and/or pursuant to policies, customs, and/or practices of Defendant Police in her actions described herein.

91.  As a direct and proximate result of the conduct of Defendant Hawkins, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

92.  As shown by the foregoing, Defendant Hawkins' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive

damages in an amount sufficient to punish Defendant and/or deter her and others similarly situated from such conduct in the future.

93.    Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendant Hawkins and Defendant Police.

94.    Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT III:**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS,**
**COGNIZABLE UNDER 42 U.S.C. § 1983**
***As to Defendant Police***

95.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

96.    The violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments, Plaintiff's damages, and the conduct of Defendants, including but not limited to Defendant Hawkins, were directly and proximately caused by the actions and/or inactions of Defendant Police, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and

the need for more or different training, supervision, investigation, or discipline in the areas of:

    a.  Legal cause to stop, detain, arrest, and criminally charge a citizen;

    b.  The use of force by police officers;

    c.  The proper exercise of police powers, including, but not limited to searches and seizures, the making of an arrest, the use of force, and the bringing of criminal charges;

    d.  The failure to identify and take remedial action or disciplinary action against police officers who are the subject of civilian or internal complaints of misconduct;

    e.  Police officers' use of their status as police officers to employ the use of force or to achieve ends not reasonably related to their police duties;

    f.  The failure of police officers to follow established policies, procedures, directives, and instructions regarding searches and seizures, arrests, the use of force, and the institution of criminal charges under such circumstances as contained herein; and

    g.  The practice among Defendant Police officers of instituting false charges against individuals whom the officers have subjected to unlawful force with the intention of precluding such individuals from instituting civil claims.

97.    As a direct and proximate result of the conduct of Defendant Police, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, pain and

suffering, personal humiliation, garden variety emotional distress, and other related compensatory damages.

98.    As shown by the foregoing, the conduct of Defendant Police was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant and/or deter it and others similarly situated from such conduct in the future.

99.    Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

100.    Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT IV:**
**FAILURE TO TRAIN RESULTING IN THE DEPRIVATION OF RIGHTS**
**UNDER THE FOURTH AND FOURTEENTH AMENDMENTS,**
**COGNIZABLE UNDER 42 U.S.C. § 1983**
***As to Defendants Police, Dotson and O'Toole***

101.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

102.   As demonstrated herein, Defendant Hawkins' actions and/or inactions deprived Plaintiff of her Constitutional rights to be free from unreasonable searches and seizures and from the unlawful use of excessive force as guaranteed by the Fourth and Fourteenth Amendments.

103.   At all times relevant herein, Defendant Hawkins acted under color of law prescribed to her and/or pursuant to policies, customs, and/or practices of Defendant Police.

104.   At all times relevant herein, Plaintiff is under information and belief that the training policies of Defendants Police, Dotson, and O'Toole were not adequate to train their police officers to handle the usual and recurring situations with which they must deal.

105.   Defendants Police, Dotson, and O'Toole were deliberately indifferent to the obvious consequences of their failure to train its police officers adequately.

106.   The failure of Defendants Police, Dotson, and O'Toole to provide adequate training caused the deprivation of Plaintiff's rights by Defendant Hawkins; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiff's Constitutional rights as to be the moving force that caused the ultimate injury.

107.   Defendants Police, Dotson, and O'Toole were or should personally have been aware that Plaintiff faced a substantial risk of serious harm by failing to properly train their subordinate officers as set forth herein.

108.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

109.   As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

110.   Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

111.   No Defendant is entitled to qualified immunity for their actions.

112.   Defendant Board of Police Commissioners is not entitled to qualified immunity and is separately liable for the St. Louis Metropolitan Police Department's policies, usages, customs, practices, and/or Defendant O'Toole's decisions as the final decision and policy maker.

113.   Plaintiff is under information and belief that at all relevant times herein, Defendants Dotson and O'Toole had policymaking authority over the policies and procedures of Defendant Police that directly and proximately resulted in the deprivation of Plaintiff's constitutional rights.

114.   Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is

deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

## COUNT V:
## FAILURE TO SUPERVISE RESULTING IN THE DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS, COGNIZABLE UNDER 42 U.S.C. § 1983
### *As to Defendants Police, Dotson, and O'Toole*

115.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

116.    As demonstrated herein, Defendant Hawkins' actions and/or inactions deprived Plaintiff of her Constitutional rights to be free from unreasonable searches and seizures and from the unlawful use of excessive force as guaranteed by the Fourth and Fourteenth Amendments.

117.    Defendants O'Toole and Dotson personally knew that their subordinates, namely Defendant Hawkins, were engaging in the aforementioned acts which caused Plaintiff to face a substantial risk of serious harm.

118.    Plaintiff is under information and belief that Defendants O'Toole and Dotson provided inadequate supervision of their subordinates, namely Defendant Hawkins, so as to ensure compliance with existing department policies and procedures, as well as appropriate "industry standards."

119.    Plaintiff is under information and belief that Plaintiff's Constitutional violations as set forth herein were not the first committed by Defendant Police employees, namely subordinates of Defendants Dotson and O'Toole.

120.   Defendants Dotson and O'Toole made a deliberate choice not to provide adequate supervision over his subordinates.

121.   Moreover, Defendants Dotson and O'Toole should have been aware of widespread abuse, meaning abuse that was obvious, flagrant, rampant, and of continued duration thus putting Defendants Dotson and O'Toole on notice of the need to take corrective action through heightened supervision of Defendant Dotson and O'Toole's subordinates.

122.   At all times relevant herein, all individual Defendants were acting under color of law prescribed to them and/or pursuant to policies, customs, and/or practices of Defendant Police.

123.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, personal humiliation, pain and suffering, garden variety emotional distress, and other related compensatory damages.

124.   As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

125.   No Defendant is entitled to qualified immunity for their actions.

126.   Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

**COUNT VI:**
**CIVIL CONSPIRACY IN FURTHERANCE OF VIOLATIONS OF THE FOURTH AMENDMENT, COGNIZABLE UNDER 42 U.S.C. § 1983**
***As to Defendants Hawkins, Swinton, and O'Toole***

127.   The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

128.   Defendants Swinton and O'Toole knew that Defendant Hawkins performed an unreasonable search of and used excessive force against Plaintiff, thus violating Plaintiff's constitutional rights.

129.   Said Defendants, with malice and with the intent to oppress Plaintiff, have deliberately, wrongfully, and unlawfully conspired with each other to violate Plaintiff's constitutional rights and concomitantly cover-up the wrongdoing of Defendant Hawkins.

130.   In furtherance of said conspiracy, Defendants did, on or about October 19 and October 20, 2012, deliberately, wrongfully, and maliciously make out false and incomplete official reports and give a false and incomplete version of the events to other persons to cover up their own misconduct and the misconduct of Defendant Hawkins.

131.   As a direct and proximate result of Defendants' deliberate, wrongful, and malicious acts in furtherance of said conspiracy, Plaintiff was deprived of her rights guaranteed in the United States Constitution.

132.   As a direct and proximate result of Defendants' deliberate, wrongful, and malicious acts in furtherance of said conspiracy, Plaintiff has suffered – and continues to suffer – physical and psychological injuries, pain and suffering, personal humiliation, garden variety emotional distress, and other related compensatory damages.

133.   Defendants, at the time of said conspiracy, were each acting in their representative capacities for Defendant Police, under color of law, and/or pursuant to policies, customs, and/or practices of Defendant Police.

134.   As shown by the foregoing, Defendants' conduct was willful, wanton, and malicious, and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and/or deter them and others similarly situated from such conduct in the future.

135.   Said Defendants are jointly and severally liable to Plaintiff for the damages outlined in this Count.

136.   Plaintiff is under information and belief that the aforementioned violations of Plaintiff's constitutional rights is part of a pattern and practice of similar behavior on the part of Defendants.

137.   Plaintiff is entitled to reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays this Honorable Court award Plaintiff damages – compensatory, nominal, and/or punitive – in such an amount in excess of $25,000.00 as is

deemed fair and reasonable; for reasonable attorneys' fees; for costs; for interest as allowed by law; and for such other and further relief deemed just and proper.

Respectfully submitted,

HOLLINGSHEAD & DUDLEY

/s/ Jeremy D. Hollingshead
Jeremy D. Hollingshead #60447MO
7777 Bonhomme Avenue, Suite 2401
Saint Louis, Missouri 63105
Telephone:    (314) 480-5474
Facsimile:     (314) 594-0825
Email: jhollingshead@hdtriallawyers.com

ATTORNEYS FOR PLAINTIFF