UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KAYLA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-156 PLC |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on two motions for summary judgment:  (1) a motion for partial summary judgment filed by Plaintiff Kayla Robinson (ECF No. 50); and (2) a motion for summary judgment filed by Defendants[2] St. Louis City police officers Angela Hawkins and Kelli Swinton and the St. Louis Metropolitan Police Department Board of Police Commissioners and its individual members (collectively, "Board Defendants") (ECF No. 53).   For the following reasons, Plaintiff's motion for partial summary judgment is denied and Defendants' motion for summary judgment is granted in part and denied in part.

On November 15, 2016, Plaintiff filed a petition in the Circuit Court of the City of St. Louis pursuant to 42 U.S.C. § 1983 asserting claims of unreasonable strip search, excessive force, municipal liability, and civil conspiracy following her arrest on October 19, 2012 in the City of St. Louis.   (ECF No. 3).  Plaintiff alleged that, during a traffic stop, Defendant Hawkins,

---

[1] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (ECF No. 28).
[2] Defendants' summary judgment motion was also filed by Defendants Lt. Col. Lawrence O'Toole and Chief D. Samuel Dotson III.  Plaintiff filed and the Court granted a motion to voluntarily dismiss from this case Defendants O'Toole and Dotson.  (ECF Nos. 82 & 83). Therefore, the Court need not address the motion as to Defendants O'Toole and Dotson.

1

a St. Louis Metropolitan Police Department (SLMPD) officer, pushed Plaintiff against a tractor-trailer two times, lowered Plaintiff's pants and underwear, and placed her hand against Plaintiff's vagina, thus violating the Fourth Amendment's prohibition on unreasonable searches and use of excessive force (Counts I and II). Plaintiff further claimed that Defendants Hawkins and Defendant Swinton, another SLMPD officer, conspired to cover-up Defendant Hawkins' wrongdoing (Count VI).

In her original petition, Plaintiff also alleged counts of municipal and supervisory liability against the City of St. Louis, claiming its customs and failure to train and supervise Defendant Hawkins led to the deprivation of Plaintiff's constitutional rights (Counts III, IV, V). Defendant City of St. Louis removed the case to federal court pursuant to 28 U.S.C. § 1441 and the Court's federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1). Plaintiff subsequently filed a first amended complaint replacing Defendant City of St. Louis with the St. Louis Board of Police Commissioners and its individual members, Defendants Gray, Battle-Turner, Irwin, Switzer, and Slay, in their official capacities only. (ECF No. 18).

Plaintiff's first amended complaint alleges the following claims under Section 1983: (1) unreasonable search and use of excessive force in violation of the Fourth and Fourteenth Amendments against Defendant Hawkins in her individual and official capacities; (2) unconstitutional custom or policy permitting unreasonable searches and use of excessive force, failure to train, and failure to supervise resulting in the deprivation of rights under the Fourth and Fourteenth Amendments against the Board Defendants; and (3) civil conspiracy in furtherance of violations of the Fourth Amendment against Defendants Hawkins and Swinton in their individual and official capacities.

Plaintiff moves for partial summary judgment against Defendant Hawkins on her claim

under 42 U.S.C. § 1983 for unreasonable search in violation of the Fourth and Fourteenth Amendments of the United States Constitution. (ECF No. 50). Defendants seek summary judgment on all six of Plaintiff's Section 1983 claims. (ECF No. 53).

## I. Legal Standard

The standards applicable to summary judgment motions are well settled, and they do not change when both parties have moved for summary judgment. See Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); CitiMortgage, Inc. v. Equity Bank, N.A., 261 F.Supp.3d 942, 950 (E.D.Mo. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." Id. at 324 (quotation marks omitted).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted)). The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Torgerson v. City of

Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

Where parties file cross-motions for summary judgment, each motion should be reviewed in its own right, with each non-moving party "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record[.]" Wermager, 716 F.2d at 1214; see also Canada v. Union Elec Co., 135 F.3d 1211, 1212-13 (8th Cir. 1998). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager, 716 F.2d at 1214.

## II.    Background

### a. Stop and Search

On the evening of October 19, 2012, St. Louis Metropolitan Police Department (SLMPD) officers, including Defendant Hawkins, Capt. Joseph Spiess, and Sgt. Mark McMurry, were conducting a police checkpoint to "look for guns, drugs, and violent offenders."  At approximately 10:30 p.m., Plaintiff's boyfriend, Ronnell Jenkins, was driving Plaintiff's car, and Plaintiff was a front-seat passenger.  Mr. Jenkins' brother, Richard Jones, was a passenger in the back seat of the vehicle. Defendant Hawkins and Capt. Spiess observed Plaintiff's vehicle make an illegal u-turn to avoid the checkpoint.  In response, they activated the roof lights and siren of their unmarked police car and pulled over Plaintiff's vehicle.  Defendant Hawkins and Captain Spiess stopped Plaintiff's vehicle to determine if Plaintiff, Mr. Jenkins, and Mr. Jones were "purposely attempting to avoid police contact at the checkpoint" and to "look for drugs and guns."

Defendant Hawkins, wearing street attire and a black vest that said "Police," approached

Plaintiff's vehicle. As Defendant Hawkins neared the rear, passenger side of the vehicle, she observed Mr. Jenkins "hand something" to Plaintiff. Defendant Hawkins continued walking toward the passenger-side door and saw Plaintiff "taking her hands out of the front of her waistband." Defendant Hawkins reached the passenger-side door and observed Mr. Jenkins and Plaintiff complete their exchange within "a second or two." Defendant Hawkins had "a hunch" that Plaintiff and Mr. Jenkins had exchanged drugs or a weapon.

Defendant Hawkins instructed Plaintiff to show her hands and exit the vehicle. Plaintiff complied. Defendant Hawkins handcuffed Plaintiff's hands together behind her back and performed a standard pat-down search.[3] Defendant Hawkins found no weapons or contraband on Plaintiff's person as a result of that search.

After the pat-down search, Defendant Hawkins asked Plaintiff what she had placed in her waistband, and Plaintiff admitted, "I have some marijuana." When Defendant Hawkins instructed Plaintiff to retrieve the marijuana, Plaintiff asked Defendant Hawkins to transport her to the police station and allow her to retrieve the marijuana there. Defendant Hawkins refused, explaining that ". . . it was an officer safety issue and that wasn't . . . possible."

Because Plaintiff did not want "to retrieve [the marijuana] in front of the male officers," Defendant Hawkins walked her around a building to "a nearby parking lot," stopping behind a tractor-trailer. Plaintiff did not resist but "begged" Defendant Hawkins to conduct the search "back at the station."

Prior to conducting the strip search, Defendant Hawkins requested rubber gloves over the

---

[3] In her deposition, Defendant Hawkins explained that standard pat-down searches involved patting the outside of the person's: waistband; pockets; legs down to the ankles and "all the way up to the vagina region"; buttocks; and "top portion" including "the female's bra." Defendant Hawkins acknowledged that, "[s]hort of a gun being literally in [Plaintiff's] vagina," a pat-down search would reveal any weapon that Plaintiff was carrying.

radio. Another SLMPD officer, Sgt. Mark McMurry, drove his patrol car "alongside the trailer," handed Defendant Hawkins a pair of gloves, and "walked away."

At this point, Plaintiff's and Defendants' versions of events diverge significantly. According to Defendant Hawkins' deposition testimony, she unfastened Plaintiff's belt because Plaintiff's hands remained cuffed behind her back. Defendant Hawkins stated that unfastening Plaintiff's belt loosened Plaintiff's jeans "quite substantially" so that Plaintiff was able to lower them to about mid-thigh and retrieve the marijuana from her underwear. According to Defendant Hawkins' account, when Plaintiff retrieved the marijuana, she also withdrew a small baggie of what appeared to be crack, which Plaintiff attempted to shove down her pants leg and hide under her foot. Defendant Hawkins ordered Plaintiff to move her foot and collected the baggie. Defendant Hawkins stated that Plaintiff pulled her pants back up in the same manner that she pulled them down, and Defendant Hawkins refastened her belt.

Plaintiff, on the other hand, alleges that, when she asked Defendant Hawkins to search her at the police station, Defendant Hawkins said, "Bitch, no, we're doing this right now" and "was just yelling and in [Plaintiff's] face continuously." In her deposition, Plaintiff testified that Defendant Hawkins "drug [her] without shoes to a vacant lot where a male officer waited in his cruiser," and Plaintiff handed Defendant Hawkins the marijuana. Defendant Hawkins said, "Bitch, this isn't all that you have. You're not freaking out over a bag of marijuana," grabbed Plaintiff by the arms, and pushed her face-forward into the trailer. Defendant Hawkins then "flung [Plaintiff] around" and pushed her backward into the trailer. A picture of the jacket Plaintiff wore on October 19, 2012 shows what appears to be oil stains on the hood and left side.

According to Plaintiff, Defendant Hawkins unfastened Plaintiff's pants, pulled her underwear down, and placed her entire hand in Plaintiff's "underwear right there while [the male

cop] was there." Defendant Hawkins touched Plaintiff's vagina and "behind" and she felt Defendant Hawkins' "fingers on the inside of [her] vagina lips." Shortly thereafter, Defendant Hawkins placed a small baggie on the ground in front of Plaintiff and "said it was dope."

A surveillance video shows that, during the time Defendant Hawkins was strip searching Plaintiff behind the tractor-trailer, a male officer walked ". . . into view and [walked] in the area that [Defendant Hawkins] had taken [Plaintiff]" and is later seen "walking back to the area of the other suspects and the patrol car." In addition, surveillance video shows Defendant Hawkins and another male officer escort Plaintiff back to her vehicle "a couple minutes later." Defendant Hawkins does not dispute that there were at least two male officers in the parking lot while she searched Plaintiff.

Shortly after Defendant Hawkins walked Plaintiff to the patrol car, Defendant Swinton arrived at the scene. Defendant Swinton described Plaintiff as "hysterical," as though she was "having a panic attack." Defendant Swinton informed Plaintiff she was under arrest, and she and another officer transported Plaintiff to the police station.

At the police station, Defendant Swinton offered Plaintiff the opportunity to provide a written statement. Plaintiff wrote a statement, in which she complained that Defendant Hawkins "used unnecessary force and conducted some form of a strip search . . . in front of males, and she was uncomfortable with it."[4] Although Defendant Swinton observed Plaintiff handwrite the statement, she did not include Plaintiff's statement in the final incident report. The Circuit

---

[4] In her deposition, Plaintiff testified that she wrote two statements. According to Plaintiff, Defendant Swinton insisted Plaintiff write a statement saying that "it was [Mr. Jenkins'] dope" and informed her that she "wouldn't be able to leave until she had written this statement." (Hawkins' Dep. at 65-66). In her first statement, Plaintiff wrote "I want my lawyer and I was physically and sexually assaulted by the St. Louis Police Department." (Id. at 65). Defendant Swinton "looked at it and laughed and balled it up" and then took Plaintiff to a cell. (Id.). Plaintiff wrote a second statement later that night. (Id. at 66).

Attorney did not charge Plaintiff with any crime.

### b. Incident Report

Defendant Swinton completed the incident report even though she did not "witness any part of the incident" involving Plaintiff's encounter with Defendant Hawkins. Defendant Swinton based the report on information that Defendant Hawkins orally provided her at the police station after Plaintiff's arrest.

The incident report stated that, on October 19, 2012, Defendant Hawkins and Det. Michael Betz observed Plaintiff's vehicle make an illegal u-turn, "curb[ed] the vehicle," and "conducted a voluntary field interview with the occupants of the car[.]" (ECF No.51-1, Pl.'s Ex. 1). Defendant Hawkins observed Plaintiff and Mr. Jenkins complete "a hand to hand transaction" and Plaintiff "removing her hands from her waistband, as if she was concealing an object[.]" (Id.). The incident report continued:

> [Plaintiff] was instructed to retrieve the items she placed in her waistband. [Plaintiff] voluntarily retrieved an individually wrapped bag of a green vegetable like substance from inside her pants within her undergarment (panties). She complied; as she removed the plastic bag containing green vegetable like substance from her pants, another plastic bag containing a white rock like substance fell to the ground out of the left pants leg of [Plaintiff]. Plaintiff immediately placed her left foot on top of the bag in an attempt to conceal the item.

(Id.). The incident report stated that Plaintiff "was offered the opportunity to reduce a statement to writing however she declined." (Id.).

As previously stated, Defendant Swinton did not include Plaintiff's handwritten statement in the final incident report. In that statement, Plaintiff wrote that Mr. Jenkins was driving her car when officers from the SLMPD pulled them over. (ECF No. 66-5, Pl.'s Ex. 8). Mr. Jenkins handed Plaintiff "marijuana in a bag and [she] put it in [her] pants." (Id.). Plaintiff described the stop, pat-down search, and strip search as follows:

A female officer immediately pulled me from the vehicle and cuffed me. She drug me w/o shoes to a vacant dark lot where a male officer waited in his cruiser. She searched me by my vehicle and again in the lot. I told her I had weed she said I needed to pull my pants down. She unfastened my pants and pulled my underwear and pants down. I begged her to take me to the station and search me she said no. All of this took place in front of a male officer who gave her a rubber glove. Once I pulled the weed from my pants she pushed me hard against the empty trailers getting black grease all over my jacket and shirt. She was very aggressive. I proceeded to tell her over and over I was having a panic attack. The male officer made me feel very uncomfortable with being undressed in an empty dark lot where no one could help me. The female officer had been given the weed, pushed me into the trailer all while I was cuffed. She then was behind my back and put a small bag in front of me later and said it was dope. I told her weed isn't dope. She said it was in the rocks somewhere but I had already been searched, stripped and shoeless. The weed was not mine[.] I have never touched dope in my life. I would like to file a report on the officer who made me pull my pants down.

(Id.).

At her deposition, Defendant Swinton acknowledged that the incident report contained many inaccuracies. For example, the report stated that Defendant Hawkins was riding with Det. Betz on October 19, 2012 and it mentioned neither Capt. Spiess nor Sgt. McMurry, who were present during Plaintiff's arrest. (ECF Nos. 51-1, Pl.'s Ex. 1). In addition, the incident report incorrectly stated that Defendant Hawkins and Det. Betz conducted "a voluntary field interview with the occupants of the car," when, in fact, the vehicle's occupants were not free to leave. (ECF No. 51-1, Pl.'s Ex. 1). The incident report contained no mention of: the pat-down search; Defendant Hawkins' request for rubber gloves; the strip search or the parking lot where it was conducted; Plaintiff's request that Defendant Hawkins conduct the strip search at the police station; the unfastening of Plaintiff's belt lowering of her pants; or Plaintiff's distress. (ECF No. 51-1, Pl.'s Ex. 1).

According to Defendant Swinton's deposition testimony, she did not include Plaintiff's written statement in the incident report because Plaintiff did not sign it. However, SLMPD policy does not require that a suspect sign a statement to include it in an officer's incident report.

c.  *Special Order 8-03*

At the time of the incident, SLMPD's Special Order 8-03 governed, among other things, strip and body cavity searches.  According to Section V(A)(2) of Special Order 8-03, a strip search is "the removal or rearrangement of some or all of the clothing of a person so as to permit a visual or manual inspection of the genitals, buttocks, anus, breasts, or undergarments of such person[.]" (ECF No. 66-3, Pl.'s Ex. 3).  Under the policy, an officer could conduct a strip search only if "all of the following conditions" were satisfied:

> (a) The Watch Commander responsible for either the investigation or the custody of the prisoner has given written approval for the search.  Written approval will be recorded on the "Prisoner Search Form. . . .
> (b) By an officer and in the presence of officers of the same sex as the person to be searched.  Only those persons necessary for the security and safety of the officer and prisoner will be present. . . .
> (c) Under sanitary conditions and in a place where the search cannot be viewed by persons other than those necessary for the security and safety of the prisoner and officers.

(Id.).

At her deposition, Defendant Hawkins admitted that, under the terms of Special Order 8-03, the search she conducted of Plaintiff on October 19, 2012 constituted a "strip search" and she conducted the strip search without a commanding officer's prior written approval.   (Hawkins' Dep. at 225).  Defendant Hawkins explained that, from the time of Plaintiff's strip search until shortly before her October 2017 deposition, Defendant Hawkins did not believe that the policy applied when an officer ordered a suspect to remove his or her own clothes.

d.  *IAD investigation*

Plaintiff filed a complaint with the SLMPD's Internal Affairs Division ("IAD") on October 22, 2012.  (ECF No. 75, Pl.'s Ex. 6).  In her complaint, Plaintiff stated:

> [D]uring a traffic stop, Detective Angela Hawkins, DSN 7215, assigned to District Seven, conducted a search of her (Robinson's person) and pulled

> Robinson's pants and underwear down. During the search Detective Hawkins touched Robinson's genitals with her (Detective Hawkins') hand. In addition, Robinson alleges that Detective Hawkins forcefully pushed her (Robinson) against a semitrailer causing injury to her arm.

(Id.). Via letter dated August 26, 2013, IAD informed Plaintiff that it had "sustained" Plaintiff's allegation of an improper search in "[v]iolation of Special Order 8-03, Section V; A-2 (a, b, c)." (Id.).

### III. Discussion

#### A. Plaintiff's motion for partial summary judgment on Count I against Defendant Hawkins

Plaintiff asserts she is entitled to summary judgment on her Section 1983 claim against Defendant Hawkins for unreasonable search because, even accepting Defendant Hawkins' facts as true, the strip search violated Plaintiff's Fourth Amendment rights. (ECF No. 50). Defendant Hawkins counters that the Court must deny Plaintiff's motion for partial summary judgment because the strip search was "conducted in a secluded place, by a female, was done quickly, and not in an abusive manner." (ECF No. 62).

To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right.[5] Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). Here, there is no dispute that Defendant Hawkins "acted under color of state law." Rather, the parties dispute whether Defendant Hawkins violated Plaintiff's constitutional rights.

The Fourth Amendment prohibits unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979). See also D.H. v. Doe 1, No. 4:14-CV-1882 RWS, 2016 WL 4720456, at *4 (E.D.Mo. Sept. 9, 2016) ("Illegal strip searches by law enforcement officers are rightly the target

---

[5] Plaintiff cites no cases in which this district court has granted a plaintiff's motion for summary judgment on a Section 1983 claim.

of lawsuits to stop such practices."). Strip searches are governed by the Fourth Amendment and are actionable under section 1983. See Schmidt, 557 F.3d at 572. In determining whether a strip search is unreasonable, a court must balance the need for the particular search against the invasion of personal rights that the search entailed. See Franklin v. Lockhart, 883 F.2d 654, 656 (8th Cir. 1989). Factors that a court must consider include: "(1) the justification for initiating the search, (2) the scope of the particular intrusion, (3) the place in which the search is conducted, and (4) the manner in which it is conducted." Schmidt, 557 F.3d at 572 (citing Wolfish, 441 U.S. at 559). Courts applying the Wolfish balancing test "have recognized that strip and visual body cavity searches impinge seriously upon the values that the Fourth Amendment was meant to protect." Swain v. Spinney, 117 F.3d 1, 6 (1st Cir. 1997) ("[A] strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual.").

Plaintiff maintains the strip search was unconstitutional because it was unjustified and conducted in an unreasonably intimidating and humiliating manner. (ECF No. 51). As to the justification for initiating the search, Plaintiff argues that the vehicle stop was based upon "a mere municipal ordinance violation" and emphasizes the "ridiculous" nature of Defendant Hawkins' deposition testimony that she performed the strip search because she believed Plaintiff might have hidden a weapon in her vagina. (ECF No. 51 at 24-25). Tellingly, Defendant Hawkins no longer claims that her decision to conduct a strip search was based upon concern for officer safety. Rather, Defendant Hawkins asserts that, after Plaintiff advised her that she had marijuana in her possession, she had probable cause to search Plaintiff for drugs. (ECF No. 62 at 3).

"The decision to stop an automobile is reasonable where the police have probable cause

to believe that a traffic violation has occurred." <u>U.S. v. Wright</u>, 512 F.3d 466, 471 (8th Cir. 2008) (quoting <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996)). "Any traffic violation, however minor, provides probable cause for a traffic stop." <u>Id.</u> "An otherwise constitutional traffic stop is not invalidated by the fact that it was 'mere pretext for a narcotics search.'" <u>Id.</u> (quoting <u>United States v. Williams</u>, 429 F.3d 767, 771 (8th Cir. 2005)). "[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop," <u>Maryland v. Wilson</u>, 519 U.S. 408, 415 (1997), and "[s]uspicious behavior by a passenger during a traffic stop may reasonably warrant a pat-down of the individual." <u>United States v. Davis</u>, 457 F.3d 817, 822 (8th Cir. 2006).

The undisputed facts show that Defendant Hawkins and Capt. Spiess stopped Plaintiff's vehicle after it made an illegal u-turn.[6]  It is also undisputed that, as Defendant Hawkins approached Plaintiff's vehicle on foot, she observed movements by Mr. Jenkins and Plaintiff, which suggested that Mr. Jenkins handed Plaintiff a weapon or contraband that Plaintiff then hid in her pants.  Defendant Hawkins' observations justified placing Plaintiff in handcuffs and performing a pat-down search to secure Defendant Hawkins' personal safety.  <u>See e.g.</u>, <u>Davis</u>, 457 F.3d at 822 ("During a <u>Terry</u> stop, an officer who has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety.").

According to Defendant Hawkins' account, which the Court credits for the purpose of Plaintiff's motion for summary judgment, after performing the pat-down search, she asked Plaintiff what she had placed in her waistband, and Plaintiff informed her that she "had some marijuana."  It was not unreasonable, at this point, for Defendant Hawkins to seize the marijuana

_____

[6] In response to Defendants' motion for summary judgment, Plaintiff admits that she was legally detained.  (ECF No. 67 at 8).

from Plaintiff's person. "A search incident to arrest is justified by the concern for officer safety and the need to collect evidence of the offense." United States v. Pratt, 355 F.3d 1119, 1121 (8th Cir. 2004). Based on Defendant Hawkins' evidence, a reasonable jury could find that the strip search was justified.

Plaintiff also argues that the strip search was unreasonable because Defendant Hawkins performed it in an unnecessarily intimidating and humiliating manner. (ECF No. 51 at 22). In particular, Plaintiff points to Defendants' evidence that Defendant Hawkins watched Plaintiff remove the marijuana from her underwear and at least one male officer was standing nearby. In response, Defendant contends that the search satisfied constitutional requirements because it was performed quickly, out of public view, by a female officer wearing sanitary gloves. (ECF No. 62).

The undisputed facts show that Defendant Hawkins, a female officer, conducted the search behind a tractor-trailer that shielded Plaintiff from public view. See, e.g., Richmond v. City of Brooklyn Center, 490 F.3d 1002, 1008 (8th Cir. 2007) ("strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns" and "by officials of the same sex as the individual to be searched."). There are genuine issues of fact, however, regarding whether and at what distance a male officer watched the search; whether Defendant Hawkins used abusive language and excessive force during the search; and whether Plaintiff's pants and/or underpants were lowered further than necessary for Plaintiff to retrieve the marijuana hidden inside.

In support of her position that the strip search was unconstitutional, Plaintiff relies on Pace v. City of Des Moines, 201 F.3d 1050 (8th Cir. 2000). In Pace, the Eighth Circuit affirmed the denial of the defendant police officer's motion for summary judgment on the ground of

qualified immunity.  Id. at 1052.  The defendant, acting without a warrant:  entered the plaintiff's place of business, flashed his firearm, ordered the plaintiff to step outside, pushed the plaintiff against a wall, ordered the plaintiff to remove his shirt, and photographed the tattoo on the plaintiff's chest.  Id. at 1053.    The Eighth Circuit held that detaining and photographing the plaintiff without his consent exceeded the scope of an investigative stop and the defendant was not entitled to qualified immunity.  Id. at 1053-54.

Pace is inapposite because it involved an investigative stop.[7]  See, e.g., Schmidt, 557 F.3d at 573 ("The argument in Pace centered around whether a Terry stop was unreasonably delayed when police ordered Pace to remove his shirt in public in order to photograph his tattoo.").  Unlike the defendant in Pace, Defendant Hawkins had probable cause to stop, search, and arrest Plaintiff and was, therefore, not bound by the constitutional limitations of an investigative stop.

In light of the conflicting testimony, genuine issues of fact exist relating to the scope of the strip search and the manner in which it was performed.  These issues require credibility determinations that cannot be made at the summary judgment stage.  See e.g., Anderson., 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions.").  The Court therefore denies Plaintiff's motion for summary judgment on her Section 1983 claim against Defendant Hawkins for unreasonable search in violation of the Fourth Amendment.

B.   Defendants' motion for summary judgment

Defendants move for summary judgment on all six counts in Plaintiff's first amended

---

[7] The Supreme Court has described three general categories of encounters between police and citizens:  (1) consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment; (2) investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity; and (3) physical arrests, which must be supported by probable cause.  United States v. Flores–Sandoval, 474 F.3d 1142, 1144 (8th Cir.2007).

complaint. (ECF No. 53). The Court will address each count in turn.

### 1. *Official-capacity claims*

As an initial matter, the Court addresses Defendants Hawkins' and Swinton's argument that because "official claims are identical to and redundant to the claims against the Board Defendants, the Court should dismiss Plaintiff's official capacity claims [against the individual officers]." (ECF No. 54 at 5). In Counts I and II, Plaintiff sues Defendant Hawkins in her individual and official capacities and, in Count VI, Plaintiff sues Defendants Hawkins and Swinton in their individual and official capacities. Defendants Hawkins and Swinton urge the Court to dismiss Plaintiff's official-capacity claims against them.

"A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) (official capacity claims are properly dismissed as duplicative of claims against the city). See also Monell v. Dep't of Social Services, 436 U.S. 658, 690 n. 55 (1978) (A suit against a government official in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent."). Therefore, to establish the liability of an official acting in his or her official capacity, a plaintiff must prove that "a policy or custom [of the municipality] caused the alleged violation.'" Rogers v. City of Little Rock, 152 F.3d 790, 800 (8th Cir.1998).

Plaintiff's official-capacity claims against Defendants Hawkins and Swinton are duplicative of her municipal liability claims against St. Louis Board of Police Commissioners in Counts III, IV, and V. The Court therefore dismisses Plaintiff's official-capacity claims against Defendants Hawkins and Swinton. See, e.g., Brooks v. City of St. Louis, No. 4:17-CV-981 RLW, 2018 WL 346450, at *1-2 (E.D.Mo. Jan. 8, 2018).

*2. Count I: Unreasonable search (against Defendant Hawkins)*

Defendant Hawkins moves for summary judgment on Plaintiff's claim that she conducted an unreasonable strip search in violation of Plaintiff's Fourth Amendment rights, arguing that the search in question was reasonable. (ECF No. 54). Defendant Hawkins further asserts that, even if there is a question of fact as to the constitutionality of the search, she is entitled to qualified immunity because her conduct did not violate a clearly established constitutional right. (Id.). Plaintiff counters that, even accepting Defendant Hawkins' version of events, the search was unconstitutional and a reasonable officer would have known that Defendant Hawkins' conduct violated a clearly established constitutional right. (ECF No. 67).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). "In analyzing a claim of qualified immunity, [a court] may examine the two key prongs . . . in either order." Moore v. City of Desloge, Mo., 647 F.3d 841, 846 (8th Cir. 2011) (citing Camreta v. Greene, 131 S.Ct. 2020, 2031-32 (2011)).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "This is not to say that an official action is protected by qualified immunity

unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (quoting Anderson, 483 U.S. at 640) (internal citation omitted). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.").

As previously discussed with regard to Plaintiff's motion for partial summary judgment, genuine issues of material fact exist relating to the scope of the intrusion and the manner in which the search was conducted. Viewing the evidence in the light most favorable to Plaintiff, Defendant Hawkins: "dragged" Plaintiff, whose feet were bare and hands were cuffed behind her back, behind a tractor-trailer; yelled insults and curse words in Plaintiff's face; "threw" Plaintiff's body against the tractor-trailer two times; pulled down Plaintiff's pants and underwear; placed her hand between Plaintiff's bare legs; and touched Plaintiff's vagina with her hand. Based on the record before the Court, a jury could find that Defendant Hawkins' conduct deprived Plaintiff of her Fourth Amendment right to be free from unreasonable searches.

Defendant Hawkins may nevertheless be entitled to qualified immunity if the constitutional right she allegedly violated was not clearly established. Turning to the second step of the qualified immunity analysis, the Court must consider whether the law at the time of the events in question gave Defendant Hawkins "fair warning" that her conduct was unconstitutional. See Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011) (citing Hope, 536 U.S. at 741).

A person's right to be free from a strip search conducted in an unreasonable manner is clearly established. See Wolfish, 441 U.S. at 559-60. At the time of Plaintiff's strip search, the law clearly provided that strip searches should be: (1) conducted in an area as removed from

public view as possible without compromising legitimate security concerns; (2) by officials of the same sex as the individual to be searched; (3) in a hygienic manner; and (4) not in "a degrading, humiliating or abusive fashion." Richmond, 490 F.3d at 1008.

Viewing the facts in the light most favorable to Plaintiff, Defendant Hawkins refused Plaintiff's repeated requests to strip-search her at the police station and, instead, conducted the strip search in a parking lot and in the presence of two male officers. Defendant Hawkins used threatening and offensive language and physical force before and during the search. While Plaintiff's hands were cuffed behind her back, Defendant Hawkins "threw" Plaintiff against the tractor-trailer two times, pulled down Plaintiff's pants and underwear, and placed her hand between Plaintiff's legs. Plaintiff felt Defendant Hawkins' fingers touch her vagina, "behind," and "the inside of [her] vagina lips." "Every objectively reasonable officer would have known that, when conducting a strip search, it is unreasonable to do so in the manner demonstrated by the sum of the facts alleged by Plaintiff[]." Evans v. Stephens, 407 F.3d 1272, 1283 (11th Cir. 2005).

Not only was the strip search unnecessarily degrading, humiliating, and abusive, "no urgency justified forcibly strip searching a handcuffed arrestee." Richmond, 490 F.3d at 1010 (Smith, J. dissenting). As Defendant Hawkins admitted in her deposition, she had no reason to believe, after conducting a pat-down search, that Plaintiff concealed a firearm on her person. See, e.g., Williams v. Kaufman County, 352 F.3d 994, 1006-07 (5th Cir. 2003); Meeks v. City of Minneapolis, 822 F.Supp.2d 919, 923 (D. Minn. 2011). To the extent Defendant Hawkins suspected Plaintiff was hiding drugs on her person, no exigent circumstance necessitated their retrieval at the scene.

In her reply memorandum in support of summary judgment, Defendant Hawkins argues

that, in light of the Eighth Circuit's decision in <u>Richmond</u>, Defendant Hawkins "did not violate any bright lines in this area." (ECF No. 74 at 7). <u>Richmond</u> is factually and procedurally inapposite. In that case, the defendant police officer arrested the plaintiff in a motel room pursuant to an arrest warrant and, in the ensuing search, discovered a small amount of marijuana and over $1,300 on his person. 490 F.3d at 1005. Suspecting that the plaintiff, who was handcuffed, had concealed drugs on his person, the police officer lowered the plaintiff's pants and underwear, "visually inspected, without touching, [the plaintiff's] genitalia and buttocks," and, wearing a latex glove, "grabbed the corner of [a] tissue" that was "protruding from [the plaintiff's] buttocks." <u>Id.</u> at 1005.

After a jury returned a verdict in favor of Plaintiff on his Section 1983 action for damages for an unreasonable search, the defendant police officer appealed the district court's denial of qualified immunity. <u>Id.</u> at 1006-07. Importantly, the defendant did not dispute on appeal the jury's finding that he conducted the strip search in an unreasonable manner in violation of the plaintiff's Fourth Amendment rights. <u>Id.</u> at 1007. The Eighth Circuit held that the defendant was entitled to qualified immunity because a reasonable officer in the defendant's position would not have understood that the strip search was unlawful because: the strip search satisfied the standards for privacy and hygiene; the defendant did not use excessive force; and the plaintiff did not "cite any evidence of insulting, intimidating or humiliating comments or jokes by the officers." <u>Id.</u> at 1008-09.

Given the distinguishable facts and that the <u>Richmond</u> court did not consider the constitutionality of the search itself, <u>Richmond</u> does not require a determination that Defendant Hawkins lacked fair notice that her conduct was unlawful. The Court therefore denies Defendant Hawkins' motion for summary judgment as to the Section 1983 unreasonable search claim in

Plaintiff's Count I.

   *3. Count II:  Excessive force (against Defendant Hawkins)*

   Defendant Hawkins moves for summary judgment on Plaintiff's Section 1983 claim for excessive force, arguing that the amount of force she used during the strip search and arrest was reasonable.  (ECF No. 54).  Defendant Hawkins further argues even if the Court finds a question of fact with regard to the amount of force she used, she is entitled to qualified immunity because, under established law, "the use of force in this case could not reasonably be classified as clearly impermissible."  (Id. at 5).  Plaintiff opposes summary judgment on the ground that the force used was objectively unreasonable and violated her clearly established right to be right free from excessive force.  (ECF No. 67).

   "The right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures."  Ngo v. Storlie, 495 F.3d 597, 604 (8th Cir.2007).  "In determining whether a particular use of force was excessive, [a court] considers whether it was objectively reasonable under the circumstances, 'rely[ing] on the perspective of a reasonable officer present at the scene rather than the 20/20 vision of hindsight.'"  Perry v. Woodruff County Sheriff Dept., 858 F.3d 1141, 1145 (8th Cir. 2017) (quoting Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012) (internal quotation omitted)).

   "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency."  Chambers, 641 F.3d at 907 (internal citation omitted).  In determining whether the use of force was objectively reasonable under the circumstances, a court considers:  "the severity of the crime at issue, whether the suspect poses an immediate threat to

the safety of the officer or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Perry, 858 F.3d at 1145 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Importantly, a plaintiff need not "show more than de minimis injury to establish an application of excessive force." Chambers, 641 F.3d at 907 (clarifying a previously "open question in this circuit whether an excessive force claim requires some minimum level of injury.").

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff possessed only a small amount of marijuana, was unarmed, and complied with all of Defendant Hawkins' directives. Even though Plaintiff did not behave aggressively and her hands were cuffed behind her back, Defendant Hawkins pushed her face-forward into the side of the tractor-trailer. Plaintiff's chest hit the trailer, knocking the wind out of her and causing her pain, which she rated as an eight on a ten-point scale. According to Plaintiff, Defendant Hawkins then "flung [Plaintiff] around" and pushed her again, this time backward, against the trailer, causing pain in her upper back, shoulder blades, and hands. (ECF No. 55-1 at 50). Plaintiff characterized the pain in her hands as a ten and the pain in her shoulders as a seven on a ten-point scale. After Defendant Hawkins searched Plaintiff, she tightened Plaintiff's handcuffs and refused Plaintiff's request to loosen them. Plaintiff stated that the handcuffs cut her wrists, and her shoulder pain lasted for approximately one week.[8]

"[T]he use of force against a suspect who was not threatening and not resisting may be

---

[8] As evidence of her injuries, which she acknowledges "may be considered *de minimis*," Plaintiff presented records from a visit to the emergency room at DePaul Hospital on October 20, 2012, the day the police released her from custody. (ECF No. 67 at 19; Pl.'s Ex. 15). Plaintiff presented to the emergency room with "complaints of left shoulder pain and left sided neck pain" and reported that "the police officer threw me against a semi-truck[.]" (Pl.'s Ex. 15 at 2, 3). The emergency room doctor diagnosed Plaintiff with "left shoulder pain" and prescribed Ultram, Naprosyn, and Flexiril. (Id. at 23).

unlawful." Shannon v. Koehler, 616 F.3d 855, 864 (8th Cir. 2010). Based on the record before the Court, a jury could conclude that Defendant Hawkins' conduct deprived Plaintiff of her Fourth Amendment right to be free from excessive force. See, e.g., Hemphill v Hale, No. 4:09-CV-2123 CEJ, 2011 WL 4014371, at *3 (E.D.Mo. Sept. 9, 2011) (aff'd 677 F.3d 799 (8th Cir. 2012)); Miller v. Albright, No. 4:07-CV-1086 CAS, 2009 WL 4573295, at *5 (E.D.Mo. Dec. 3, 2009).

Defendant Hawkins argues that, even if the Court finds a question of fact with regard to whether she violated a constitutional right, the Court should grant her qualified immunity because, given the limited amount of force used and Plaintiff's minor injuries, "the use of force in this case could not reasonably be classified as clearly impermissible." (ECF No. 54 at 5). Citing Crumley v. City of St. Paul, Minn., 324 F.3d 1003 (8th Cir. 2003) and Foster v. Metro. Airports Comm'n, 914 F.2d 1076 (8th Cir. 1990), Defendant Hawkins claims that pain resulting from handcuffs, shoves, and "being roughed up, without some evidence of permanent injury, are insufficient to support a claim of excessive force." (ECF No. 54 at 5).

Since deciding Crumley and Foster, and before this incident, the Eighth Circuit held that an excessive-force claim does not require some minimum level of injury. Chambers, 641 F.3d at 906-07 ("[T]here is no uniform requirement that a plaintiff show more than a *de minimis* injury to establish an application of excessive force."). Pursuant to Chambers, the excessive-force inquiry "must focus on the force applied and *not* its end result, that is, the level of injury." McClennon v. Kipke, 821 F.Supp.2d 1101, 1106 (D. Minn. 2011) (emphasis added) (citing Chambers, 641 F.3d at 906).

By focusing on the degree of injury Plaintiff suffered, Defendant Hawkins "has skipped over the question whether the use of any force was appropriate in this instance." Hemphill, 2011

WL 4014371, at *4.  When Defendant Hawkins searched and arrested Plaintiff in October 2012, clearly established law provided that the Constitution required some justification for the use of greater than *de minimis* force.  See, e.g., Stewart v. Speiser, 2018 WL 614967, at *6 (W.D.Mo. Jan. 29, 2018).  Moreover, long before Plaintiff's arrest, the Eighth Circuit "had announced that the use of force against a suspect who was not threatening and not resisting may be unlawful[.]" Burnikel v. Fong, No. 16-13930, 2018 WL 1570657, at *4 (8th Cir. Apr. 2, 2018) (quoting Shannon, 616 F.3d at 864).

Plaintiff presented evidence that Defendant shoved her twice against a tractor trailer and then tightened her handcuffs so as to cut her wrists, even though Plaintiff had committed a relatively minor offense, was not resisting arrest or attempting to flee, and posed no visible threat to Defendant Hawkins or anyone at the scene.  If accepted by a jury, the evidence could support a finding that the force applied by Defendant Hawkins served no legitimate governmental interest.  "A reasonable police officer would know that use of force unjustified by any legitimate need would be unlawful."  Hemphill, 2011 Wl 4014371, at *4.  The Court therefore denies Defendant Hawkins' motion for summary judgment on Count II on the basis of qualified immunity.

### 4.  Counts III, IV, and V:  Municipal liability (against Defendant Board) [9]

The Court now turns to Defendants' motion for summary judgment with respect to Plaintiff's Section 1983 claims against the Board Defendants.  A municipality may be liable under Section 1983 for a violation of an individual's constitutional or statutory rights if the violation resulted from:  (1) an official municipal policy; (2) and unofficial custom; or (3) a deliberately indifferent failure to train or supervise.  City of Canton, Ohio v. Harris, 489 U.S.

---

[9] Plaintiff's claims against the Board are treated as claims against the municipality.  See Holmes v. Slay, 99 F.Supp.3d 978, 983 (E.D.Mo. 2015).

378, 388 (1989); Monell, 436 U.S. at 694. In Counts III, IV, and V, Plaintiff alleges that the Board's unconstitutional custom of permitting unreasonable searches and use of excessive force,[10] failure to train, and failure to supervise caused the constitutional violations she suffered.

### a. Municipal custom

The Board Defendants move for summary judgment on Plaintiff's claim that Defendant Hawkins violated her constitutional rights pursuant to its unofficial, municipal custom, arguing that "there is no evidence of any unlawful practices by St. Louis police officers[,] which is a necessary predicate for such a claim[.]" (ECF No. 54 at 6). Plaintiff counters that her evidence of fifteen Section 1983 actions against the Board alleging "conduct similar to that which has been alleged in Plaintiff's suit" demonstrates a custom of unconstitutional conduct. (ECF No. 67 at 22-23).

To establish municipal liability based on a custom, a plaintiff bears a "heavy burden" to demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the municipality's policy-making officials after notice to the officials of the misconduct; and (3) that the plaintiff was injured by acts pursuant to the municipality's custom, meaning that the custom was the moving force behind the constitutional violation. Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018) (citing Mettler v. Whitledge, 165 F.3d 1197, 1200 (8th Cir. 1999)). The Eighth Circuit explained that it "has held municipalities

---

[10] In Count III, Plaintiff broadly alleged unconstitutional policies and customs. (ECF No. 18 at 18-19). "Policy and custom are not the same thing." Corwin v. City of Independence, Mo., 829 F.3d 695, 699-700 (8th Cir. 2016). Plaintiff did not identify an official policy that affirmatively sanctioned unconstitutional actions, and her memorandum in opposition to summary judgment argued only an unconstitutional custom. Therefore, the Court views the claim in Count III as alleging only a violation resulting from an unofficial custom and need not address the claim in the context of any allegedly unconstitutional policy.

liable ... when the plaintiffs have produced evidence of prior complaints sufficient to demonstrate that the municipalities and their officials ignored police misconduct." Id. at 1080 (quoting Mettler, 165 F.3d at 1205). "However, when the plaintiff has not made such a showing, the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." Id. (quoting Mettler, 165 F.3d at 1205). "There must also be some showing that the complaints had merit[.]" Rogers, 152 F.3d at 799.

In support of her municipal-custom claim, Plaintiff presented evidence of fifteen prior complaints and petitions alleging Section 1983 claims against the SLMPD or Defendant Board. (ECF Nos. 66-11 at 1-265, Pl.'s Ex. 18; 67 at 23-30). The complaints and petitions alleged, among other things, unlawful seizure and use of excessive force by SLMPD officers between 2002 and October 2012.[11] (Id.). Plaintiff also submitted settlement documentation relating to nine of those cases and an informal list of settlements entered between 2010 and December 2018. (Id.; see also ECF No. 66-10, Pl's Ex. 17). Eleven of the fifteen complaints and petitions identified by Plaintiff alleged use of excessive force and six alleged unlawful seizure or arrest (a claim not raised in Plaintiff's first amended complaint). None of the complaints and petitions involved strip searches.

Plaintiff's evidence does not show a "continuing, widespread, persistent pattern" of unconstitutional misconduct by SLMPD police officers "similar to the violation at issue here."

---

[11] In their reply memorandum in support of their motion for summary judgment, Defendants contend that Plaintiff failed to demonstrate a genuine issue of fact because the documents upon which she relies "constitute inadmissible hearsay testimony which is not covered by any hearsay exception." (ECF No. 74 at 13). Defendants first raised this hearsay argument in their reply brief. See, e.g., Jenkins v. Winter, 540 F.3d 751, 756 (8th Cir. 2004) ("This court does not consider issues raised for the first time on appeal in a reply brief 'unless the appellant gives some reason for failing to raise and brief the issue in his opening brief.'") (quoting Neb. Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 421 n.5 (8th Cir. 2005)). Additionally, Defendants failed to explain why this evidence is hearsay and, if so, why it is inadmissible hearsay.

Corwin v. City of Independence, Mo., 829 F.3d 695, 699-700 (8th Cir. 2016). Many of the incidents cited by Plaintiff involve facts that are dissimilar to those at issue here. See Wright v. Saint Louis Bd. of Police Com'rs, No. 4:12-CV-107 AGF, 2014 WL 4187797, at *17 (E.D.Mo. Aug. 22, 2014). For example, eight of the eleven excessive-force claims involved use of either a gun, Taser, baton, or pepper spray. Additionally, while any use of excessive force is a very serious matter, eleven excessive-force claims catalogued by Plaintiff are "not pervasive in light of the large number of arrests made each year by the SLMPD." Id. Merely showing that other complaints were made is not sufficient to show that there was a custom or policy condoning or tolerating the use of excessive force. See, e.g., Bonenberger v. St. Louis Metro. Police Dept., 956 F.Supp.2d 1059, 1070 (E.D.Mo. 2013).

Nor does Plaintiff's evidence demonstrate that the Board was deliberately indifferent to or tacitly authorized the SLMPD's excessive use of force. "To make a cognizable claim under this theory, Plaintiff must 'show that [the Board Defendants] had notice of prior incidents of police misconduct and had deliberately failed to act on this knowledge." Rohrbough v. Hall, No. 4:07-CV-996 ERW, 2008 WL 4722742, at *11 (E.D.Mo. Oct. 23, 2008) (quoting Harris v. City of Pagedale, 821 F.2d 499, 504 (8th Cir. 1987)). Plaintiff submitted no evidence that the Board received notice of the complaints and petitions. See, e.g., Id. at *11 ("While Plaintiff has introduced evidence of numerous [citizen] complaints of excessive use of force that have been filed against officers, Plaintiff has introduced no evidence that the [Board] Defendants had notice of these complaints."). cf. S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd. of Police Comm'rs, No. 4:10-CV-2163 CEJ, 2012 WL 3564030, at *9 (E.D.Mo. Aug. 17, 2012) (twenty-three instances of false reporting and nineteen IAD investigations sustaining charges of false reporting sufficiently demonstrated municipal custom of false reporting).

In support of her position that evidence of numerous complaints may support the finding of a municipal custom, Plaintiff cites <u>Lenderman</u>. In that case, the court denied the Board's motion for summary judgment on the plaintiff's claim that the Board was deliberately indifferent to SLMPD officers' widespread and persistent pattern of unlawful arrest and false reporting. <u>Id.</u> at 10. As evidence of the Board's alleged failure "to take effective action in response to a known problem," the plaintiff submitted (1) nineteen IAD investigation reports from the preceding five-year period in which a charge of false reporting was sustained and (2) twenty-three instances of false reporting during the same period in which officers submitted false reports to conceal unlawful conduct, but no IAD investigations were conducted. <u>Id.</u> at *9. The court held that the plaintiff presented evidence from which a reasonable jury could conclude that there was a widespread persistent pattern of false reporting, the Board was deliberately indifferent to or tacitly approved false reporting, and the plaintiff sustained injury as a result. <u>Id.</u> at 10.

Unlike the plaintiff in <u>Lenderman</u>, Plaintiff has not introduced evidence of numerous, similar prior complaints. As previously stated, not one of the fifteen complaints presented involved Defendant Hawkins or circumstances like those present here. Nor did Plaintiff demonstrate that the Board received notice of any of the fifteen complaints.

The undisputed evidence before the Court does not demonstrate that there was an unofficial custom for SLMPD officers to use excessive force under the circumstances here or conduct unreasonable strip searches. <u>See, e.g.</u>, <u>Bry v City of Frontenac</u>, No. 4:14-CV-1501 RLW, 2015 WL 9275661, at *8 (E.D.Mo. Dec. 18, 2015). The Court therefore grants summary judgment in favor the Board Defendants on Plaintiff's Section 1983 municipal custom claim in Count III.

    *b. Failure to train*

The Board Defendants contend they are also entitled to summary judgment on Plaintiff's failure-to-train claim in Count IV because "St. Louis Police Officers receive substantial training and . . . there is no evidence in the record [that] problems with searches or use of force were occurring on a regular basis." (ECF No. 54 at 7). Plaintiff counters that the evidence demonstrates a genuine issue of material fact as to whether the Board Defendants had notice that the training relating to "searching techniques, specifically strip search procedures" was inadequate and likely to result in a violation of constitutional rights. (ECF No. 67).

Under a failure-to-train theory, a municipality may be liable under Section 1983 if: (1) the municipality's training practices were inadequate; (2) the municipality was "deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice" on the part of the municipality; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injuries. Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) (quoting Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir.1996)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).

To survive a motion for summary judgment, a plaintiff must provide evidence that the municipality "was on notice that its training procedures were 'inadequate and likely to result in violation of constitutional rights.'" Larkin v. St. Louis Hous. Auth. Dev't Corp., 355 F.3d 1114, 1117 (8th Cir. 2004) (quoting S.J. v. Kansas City Pub. Sch. Dist., 294 F.3d 1025, 1029 (8th Cir.2002)). A plaintiff may prove notice by showing either that: (1) "the failure to train is so likely to result in a violation of constitutional rights that the need for training is patently obvious"; or (2) "a pattern of misconduct indicates that the [municipality's] responses to a

regularly recurring situation are insufficient to protect the [people's] constitutional rights." Id. (quotations and citations omitted).

A claim against a municipality for an alleged failure to train its officers cannot succeed unless an officer violated the plaintiff's constitutional rights. Neal v. St. Louis Cty. Bd. of Police Comm'rs, 217 F.3d 955, 959 (8th Cir.2000). As discussed above, genuine issues of material fact exist concerning whether Defendant Hawkins violated Plaintiff's Fourth Amendment rights by either conducting a strip search or using excessive force against her. Therefore, Plaintiff has satisfied this threshold inquiry for the purposes of summary judgment.

In regard to whether the Board was on notice that its training relating to searches, and specifically strip searches, was inadequate, Plaintiff presents no evidence of a regularly recurring practice. Rather, Plaintiff appears to argue that the need for continuous and in-depth training relating to strip search was "patently obvious." The undisputed evidence shows that, at the St. Louis Police Academy, only six to eight hours of the thirty-week program covered topics such as frisks, searches, search warrants, seizures, strip and body cavity searches, processing of prisoners and holdover conditions. While SLMPD officers received continuing education throughout their careers and were required to review and acknowledge all new special orders and updates to the police manual, including updates to Special Order 8-03, several SLMPD officers testified in their depositions that they recalled receiving no follow-up training specific to strip or body cavity searches.

There is no question that, due to the highly sensitive nature of strip searches, their use must be justified and they must be performed in such a way as to minimize the "potential invasion of the suspect's privacy." United States v. Williams, 477 F.3d 974, 977 (8th Cir. 2007). However, Plaintiff presents no evidence of either the frequency in which SLMPD officers

performed strip searches or a pattern or practice of improper strip searches by SLMPD officers. Nor is there evidence to suggest an inevitability that SLMPD officers would conduct improper strip searches and violate citizens' constitutional rights. A reasonable juror could not find, from the evidence provided, that the Board had actual or constructive notice of any inadequacy of the training it provided or the likelihood that it would result in a violation of constitutional rights. The Court therefore grants the Board Defendants' motion for summary judgment as to Plaintiff's failure to train claim in Count IV.

### c. Failure to supervise

Defendants move for summary judgment on Plaintiff's Section 1983 claim for failure to supervise in Count V, arguing that the evidence does not show a pattern of misconduct on the part of Defendant Hawkins or other SLMPD officers sufficient to support a failure to supervise claim. (ECF No. 54 at 10). In response, Plaintiff asserts that, based on the evidence of fifteen other Section 1983 lawsuits against the Board, a reasonable jury could find that "the Board, at the very least, turned a 'blind eye' to the SLMPD's misconduct." (ECF No. 67 at 33).

Municipalities may be liable under 42 U.S.C. § 1983 if they fail to properly supervise the employee who caused a deprivation of constitutional rights. See Andrews, 98 F.3d at 1078. A failure-to-supervise claim "may be maintained only if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts." Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (quotation omitted). Under Section 1983, a failure-to-supervise claim requires evidence that the municipality received notice of a pattern of unconstitutional acts committed by its employees and deliberately failed to take action. Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1216–17 (8th Cir. 2013); Andrews, 98 F.3d at 1075.

As discussed above with respect to Plaintiff's municipal custom claim, the fifteen

complaints and petitions introduced by Plaintiff are insufficient to show past misconduct similar to Defendant Hawkins' or that any such misconduct was brought to the Board Defendants' attention and ignored. Nor does Plaintiff's evidence establish that the Board turned a "blind eye" to SLMPD officers' misconduct. A reasonable jury could not find, based on fifteen claims of police misconduct over an eleven-year period, that the Board ignored a widespread pattern of unreasonable searches and the use of excessive force. Cf. Rohrbough, 2008 WL 4722742, at *13 (evidence of 322 claims of physical abuse by SLMPD officers in the five-year period preceding the plaintiff's encounter showed that the Board "either intentionally or unwittingly created an insulating barrier which prevents notice of complaints from reaching the [Board]."). Furthermore, the incidents alleged in those fifteen petitions and complaints were not similar to this one and Plaintiff presented no evidence that the Board failed to take remedial action with respect to any of the fifteen complaints. The Court therefore grants the Board Defendants' motion for summary judgment on Plaintiff's failure-to-supervise claim in Count V.

> 5. *Count VI: Conspiracy in furtherance of violations of the Fourth Amendment (against Defendants Hawkins and Swinton)*

In Plaintiff's Count VI, against Defendants Hawkins and Swinton, Plaintiff alleges a civil conspiracy claim pursuant to Section 1983. Specifically, Plaintiff claims that Defendants Hawkins and Swinton "deliberately, wrongfully, and unlawfully conspired with each other to violate Plaintiff's constitutional rights and concomitantly cover-up the wrongdoing of Defendant Hawkins." (ECF No. 18 at ¶ 129).

Defendants Hawkins and Swinton move for summary judgment on Plaintiff's Section 1983 conspiracy claim on the ground that "Plaintiff has failed to allege that Defendants conspired to deprive her of any constitutionally protected right," there is no evidence of an agreement, and the intracorporate conspiracy doctrine bars this claim. (ECF No. 54 at 10).

Plaintiff counters that she "proffered more than enough evidence that she was subjected to an unreasonable search and the use of excessive force" and "Defendants Hawkins and Swinton conspired to cover-up Defendant Hawkins' wrongdoing, which resulted in the deprivation of Plaintiff's constitutional rights." (ECF No. 67 at 35-36, 37). Additionally, Plaintiff contends that the intracorporate conspiracy doctrine does not bar Section 1983 civil conspiracy claims against municipalities. (Id. at 33).

"To prove a § 1983 conspiracy claim, a plaintiff must show: (1) defendants conspired to deprive her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured her." Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999). Additionally, a plaintiff "is required to prove a deprivation of a constitutional right or privilege in order to prevail on a [Section] 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). The first prong requires evidence of specific facts that show a "meeting of the minds" among conspirators. Barstad v. Murray Cty., 420 F.3d 880, 887 (8th Cir. 2005). "The question of the existence of a conspiracy to deprive the plaintiff[] of [her] constitutional rights should not be taken from the jury if there is a possibility that the jury could infer from the circumstances a 'meeting of the minds' or understanding among conspirators to achieve the conspiracy's aims." White, 519 F.3d at 516 (quoting Larson by Larson v. Miller, 76 F.3d 1446, 1458 (8th Cir. 1996)).

In Count VI, captioned "Civil Conspiracy in Furtherance of Violations of the Fourth Amendment," Plaintiff alleged that Defendants Swinton "knew that Defendant Hawkins performed an unreasonable search of and used excessive force against Plaintiff, thus violating Plaintiff's constitutional rights," and Defendants Swinton and Hawkins "unlawfully conspired with each other to violate Plaintiff's constitutional rights and concomitantly cover-up the

wrongdoing of Defendant Hawkins."  (ECF No. 18 at ¶¶ 129-30).  Plaintiff further stated that "[a]s a direct and proximate result of Defendants' deliberate, wrongful, and malicious acts in furtherance of said conspiracy, Plaintiff was deprived of her rights guaranteed in the United States Constitution."  (Id. at ¶ 131).

To the extent that Plaintiff claims Defendants Hawkins and Swinton conspired with each other to violate Plaintiff's rights under the Fourth Amendment, a review of the amended complaint reveals that it includes no allegations that Defendants Hawkins and Swinton conspired or agreed with each other to conduct an unlawful search of Plaintiff.  Based on the allegations, there was no purported meeting of the minds until after the alleged unlawful search when Defendant Swinton drafted the police report and Plaintiff filed her IAD complaint.

Plaintiff also alleged that Defendants Hawkins and Swinton conspired to cover up the unlawful search.  While the amended petition does not expressly allege that the cover-up was designed to deny Plaintiff her right to pursue a Section 1983 claim, Plaintiff asserts in her memorandum opposing Defendants' motion for summary judgment that, had the officers not conspired to omit pertinent information from the police report, "Plaintiff would have had even more evidence than she already has to support her § 1983 claims [against Defendant Hawkins]." (ECF No. 67 at 38).  The Court therefore reads Plaintiff's amended complaint to allege a conspiracy to deny her access to the courts.  See, e.g., Ladd v. Nocchiero, No. 4:10-CV-2219 AGF, 2014 WL 4352029, at *5 (E.D.Mo. Sept. 2, 2014).

There is a constitutional right to access to the courts. A.J. ex rel. Dixon v. Tanksley, 94 F.Supp.3d 1061, 1073 (E.D.Mo. 2015) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002).  "The right applies not only to the actual denial of access to the courts, but also to situations in

which the plaintiff has been denied meaningful access by some impediment put up by the defendant." Id. (citing Scheeler v. City of St. Cloud, 402 F.3d 826, 830 (8th Cir. 2005)).

"The question of the existence of a conspiracy to deprive [a] plaintiff[] of [her] constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims."  White, 519 F.3d at 816 (quoting Larson, 76 F.3d at 1458). Because "the elements of a conspiracy are rarely established through means other than circumstantial evidence" and "summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided[,]" the court "must be convinced that the evidence presented is insufficient to support any reasonable inference of conspiracy."  Id. (quoting Westborough Mall, Inc. v. City of Cape Girardeau, 693 F.2d 733, 743 (8th Cir. 1982)).

Viewing the facts in the light most favorable to Plaintiff, a reasonable juror could find that Defendants Swinton and Hawkins reached a meeting of the minds to omit pertinent facts from the police report relating to the search and to exclude Plaintiff's statement from the final report.   In her deposition, Defendant Swinton characterized Defendant Hawkins as her "unofficial mentor."   Even though Defendant Hawkins was the investigating officer and Defendant Swinton was not present when Defendant Hawkins searched Plaintiff, Defendant Swinton drafted the incident report.  It was unusual for an investigating officer not to draft his or her own report.  Defendant Hawkins did not complete a supplemental report or correct Officer Swinton's report.

It is undisputed that the incident report contained numerous inaccuracies.  For example, the report does not mention that Defendant Hawkins:  escorted Plaintiff to a nearby parking lot;

patted Plaintiff down; requested gloves; or unfastened Plaintiff's belt. Nor does the report state that Plaintiff was crying hysterically and repeatedly asking to be searched at the police station. Perhaps most significantly, the incident report stated that Plaintiff was offered but declined "the opportunity a statement to reduce a statement writing" when, in fact, Plaintiff completed a written statement and Officer Swinton decided to exclude it.

The Court finds that Plaintiff has submitted evidence that would support a reasonable inference of conspiracy between Defendants Hawkins and Swinton. See, e.g., Rohrbough v. Hall, 2008 WL 4722742, at *8. Summary judgment in this case is not proper because "there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." White, 519 F.3d at 816 (quoting Larson, 76 F.3d at 1458).

Defendants briefly assert that Defendants Hawkins and Swinton are entitled to qualified immunity on Plaintiff's conspiracy claim because Plaintiff "has no constitutional right with regard to the IAD investigation…or a constitutional right to an accurate police report, [therefore] any conduct in this regard resulting in the violation of a constitutional right of Plaintiff would not be clearly established under prevailing law." (ECF No. 54 at 13). However, as previously discussed, Plaintiff claims that these two Defendants violated her constitutional right to access the courts, not her right to an accurate police report or thorough IAD investigation.

"The Supreme Court has long held that 'civil rights actions are of fundamental importance in our constitutional scheme because they directly protect our most valued rights.'" S.L. ex rel. Lenderman v. St. Louis Metro. Police Dept. Bd of Police Com'rs, 725 F.3d 843, 853 (8th Cir. 2013) (quoting Bounds v. Smith, 430 U.S. 817, 828 (1977) (internal quotations omitted)). Accordingly, the Eighth Circuit has held that "conspiring to prevent a plaintiff from

bringing a viable § 1983 action by covering up a false arrest therefore may amount to a violation of a clearly established right." Id. It follows therefore that conspiring to prevent a plaintiff from bringing a Section 1983 action by covering up an unlawful search and use of excessive force would likewise violate a clearly established right. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's conspiracy claim under 42 U.S.C. § 1983 against Defendants Swinton and Hawkins in Count VI.

## IV. *Conclusion*

For the reasons set forth above, Plaintiff's motion for partial summary judgment is denied and Defendants' motion for summary judgment is granted in part and denied in part. The claims remaining for jury trial beginning on April 23, 2018 are: Counts I and II against Defendant Hawkins in her individual capacity and Count VI against Defendants Hawkins and Swinton in their individual capacities.

**IT IS HEREBY ORDERED** that the Plaintiff's motion for partial summary judgment as to liability against Defendant Hawkins (ECF No. 50) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims against Defendants Hawkins and Swinton in Counts I, II, and VI are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 53) is **GRANTED** in part and **DENIED** in part as set forth above.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of April, 2018