**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **KAYLA ROBINSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  4:17-cv-00156-PLC |
| v. | ) | |
| | ) | |
| **ST. LOUIS BOARD OF POLICE** | ) | |
| **COMMISSIONERS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S AMENDED TRIAL BRIEF**

COMES NOW Plaintiff, Kayla Robinson, by and through undersigned counsel, and for her Amended Trial Brief[1], states the following to the Court:

**I.    Procedural History.**

On November 15, 2016, Plaintiff filed the above-captioned cause of action in the Circuit Court for the City of St. Louis, Missouri alleging violations of 42 U.S.C. § 1983 against, among others, Defendant, Angela Hawkins ("Defendant Hawkins").[2]  On January 11, 2017, Defendants removed Plaintiff's cause of action to this Court.[3]  Pursuant to this Court's February 28, 2017 case management order, this matter was originally set for trial on April 13, 2018.[4]

---

[1] NOTE:  Prior to Defendants filing their Notice of Appeal, on April 9, 2018, Plaintiff filed her Trial Brief with this Court.  As a result of the Eighth Circuit Court of Appeals' decision in this matter, Plaintiff is filing this Amended Trial Brief to incorporate said appellate decision.

[2] ECF, #3.

[3] *Id.* at #2.

[4] *Id.* at #25.

On November 22, 2017, Defendants filed their joint Motion for Summary Judgment (Defendants' "MSJ").[5]   On April 3, 2018, Plaintiff voluntarily dismissed Defendants, Lawrence O'Toole and D. Samuel Dotson III.[6]   On April 6, 2018, this Court granted Defendants' MSJ as to Plaintiff's official capacity claims against Defendants Hawkins and Swinton in Counts, I, II, and VI.[7]   The Court also granted Defendants' MSJ as to Plaintiff's allegations related to "…the [police] board's unconstitutional custom of permitting unreasonable searches and use of excessive force, failure to train, and failure to supervise caus[ing] the constitutional violations [Plaintiff] suffered" as set forth in Counts III, IV, and V.[8]

Conversely, the Court denied Defendants' MSJ as to Plaintiff's unreasonable search (Count I) and excessive force claims (Count II) against Defendant Hawkins in her individual capacity and Plaintiff's civil conspiracy claim against Defendants Hawkins and Swinton in their individual capacities.[9]   On April 13, 2018, Defendants Hawkins and Swinton filed their Notice of Appeal appealing this Court's MSJ ruling to the Eighth Circuit Court of Appeals.[10]   On September 5, 2019, the Eighth Circuit Court of Appeals issued its opinion whereby it affirmed this Court's MSJ ruling in part and denied the same in part.[11]

---

[5] ECF, ##52-55.
[6] *Id.* at ##82-83.
[7] *Id.* at #84.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 104.
[11] *Robinson v. Hawkins,* 937 F.3d 1128, 1138 (8th Cir. 2019).

Specifically, the Eighth Circuit held that, "[t]he judgment of the district court is reversed as to the conspiracy and excessive force claims and affirmed as to the unreasonable search claim," and the matter was remanded to this Court "…for further proceedings consistent with this opinion."[12]  Thus, following the Eighth Circuit's opinion in this matter, Plaintiff's unreasonable search claim against Defendant Hawkins in her individual capacity remains to be tried.

## II.     Despite Being Dismissed from the Case, Officer Swinton's Credibility Remains at Issue.

In *Johnson v. Brewer*, the Eighth Circuit Court of Appeals addressed the admissibility of testimony or evidence challenging the credibility of a witness.[13]  Citing to the Supreme Court of Alaska, the court noted:

> There are no special rules of "proper impeachment" for bias. **The credibility of witnesses is always a material issue**, so the only question of materiality or relevance when evidence is offered to impeach for bias is whether the evidence tends in reason to demonstrate the existence of some fact, state of mind or condition that a reasonable person would take into account in assessing the credibility of the witness under attack. As we pointed out above, the balance must be weighed in favor of admissibility where impeachment for bias is the object.[14]

Through an analysis of the Alaska Supreme Court's decision, the Eighth Circuit then addressed the implications of the ruling as the court applied them to this circuit.

Specifically, the *Johnson* court explained that, "[a] more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing

---

[12] *Robinson,* 937 F.3d at 1138.
[13] 521 F.2d 556, 561 (8th Cir. 1975) (internal citations).
[14] *Id.* (quoting *Hutchings v. State,* 518 P.2d 767, 769 (Alaska 1974) (internal citations omitted).

possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues of personalities in the case at hand."[15] Ultimately, the court held that, **"[t]he partiality of a witness** is subject to exploration at trial, and **is always relevant as discrediting the witness** and affecting the weight of his testimony."[16] Accordingly, the court noted, "[w]e have recognized that **the exposure of a witness' motivation in testifying is a proper and important function…of cross-examination**."[17]

In the present case, Defendant Hawkins and officer Swinton's relationship, and officer Swinton's credibility are central issues to Plaintiff's theory of the case. Despite dismissing Plaintiff's civil conspiracy claim against Defendants Hawkins and [former Defendant] Swinton, the court expressed serious concerns about officer Swinton's credibility and professionalism.[18] Specifically, the court stated, "[t]aking [Plaintiff's] claims about officer Swinton's treatment as true, we agree that officer Swinton acted unprofessionally in yelling and cursing at Robinson while she drafted her statement."[19] Continuing, the court observed that, "[t]he multiple inaccuracies in [o]fficer Swinton's report are concerning."[20] As a result, the court concluded that, **"[t]hese shortcomings reflect poorly on [o]fficer Swinton's credibility**."[21]

---

[15] *Johnson,* 521 F.2d at 561.
[16] *Id.* (emphasis added).
[17] *Id.* (internal citations omitted) (emphasis added).
[18] *Id.* at 1134-35.
[19] *Id.*
[20] *Id.* at 1135.
[21] *Id.* (emphasis added).

Viewing the evidence in the light most favorable to Plaintiff, the *Robinson* court noted that:  1) "Officer Swinton called Officer Hawkins a mentor,"[22] 2) "Swinton's report included multiple material inaccuracies,"[23] 3) "…it was unusual for a person who had not witnessed either the stop or the search to prepare a report,"[24] 4) "and that Swinton was rude and disrespectful while [Plaintiff] drafted her statement."[25]   Both officer Swinton and Defendant Hawkins' credibility are material, particularly with respect to the police report written by officer Swinton, as well as Plaintiff's claims that she was pressured into removing facts from her written statement alleging Defendant Hawkins conducted an improper strip search.

Accordingly, despite the Eighth Circuit dismissing officer Swinton from this cause of action, the facts challenging her and, by proxy, Defendant Hawkins' credibility remain at issue in this case and should, therefore, be permissible areas of inquiry as to both witnesses.

### III.   Unreasonable Search

In *Robinson,* the court held that, "[s]trip searches raise special considerations, as the need for the *particular* search must be balanced against the invasion of personal rights that the search entails."[26]   Additionally, "[s]uch a search must be reasonable in its scope, manner, and location."[27]   Specific to the facts of this case, the court concluded, "[w]e

---

[22] *Robinson,* 937 F.3d at 1134.
[23] *Id.*
[24] *Id.* at 1134-35.
[25] *Id.* at 1135.
[26] *Id.* at 1136 (internal citations and quotations omitted) (emphasis in original).
[27] *Id.* (internal citations and quotations omitted).

cannot say that Officer Hawkins's search was reasonable as a matter of law, and we conclude that questions of material fact exist as to whether Officer Hawkins violated [Plaintiff's] constitutional rights."[28]

*Robinson v. Hawkins*[29]

The *Robinson* court held that, "[w]e have long prohibited officers from unduly invading personal rights during a strip search."[30]  More specifically, the court noted:

> …clearly established law holds that strip searches are to be conducted by an officer of the same sex as the suspect in an area as removed from public view as possible without compromising legitimate security concerns and to be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion.[31]

In that regard, the court stated, "[Plaintiff] claims a male officer was watching while Officer Hawkins conducted the strip search, and Officer Hawkins acknowledges that 'a male officer should not be present for a female search.'"[32]

Additionally, *Robinson* stated that Plaintiff "…claims the search was 'conducted in an unsanitary parking lot,' and Officer Hawkins has also acknowledged that the parking lot was not sanitary."[33]  Moreover, Plaintiff "…claims Officer Hawkins cursed and yelled at her," and "[t]he other officer at the scene was not of the same sex as [Plaintiff]."[34]  On these facts, the court concluded, "[a]n oily tractor-trailer in an open-air parking lot is not

---

[28] *Robinson,* 937 F.3d at 1137.
[29] *See generally Id.*
[30] *Id.*
[31] *Id.* at 1137-38.
[32] *Id.* at 1139.
[33] *Id.*
[34] *Id.*

hygienic."[35]   The court further concluded that, "…[Plaintiff's] claim that Officer Hawkins called her a 'bitch' and a 'f*cking dope fiend,' is 'evidence of insulting, intimidating or humiliating comments or jokes.'"[36]   Accordingly, the court held, "[a]s of October 19, 2012, the law spoke directly and clearly to the issues raised with respect to Officer Hawkins's search."[37]   Thus, the court "…conclude[d] that the law was sufficiently clear to inform Officer Hawkins her search of Robinson was unlawful both in scope and manner."[38]

## Other Evidence and Testimony Likely to be Introduced at Trial

Critically, Defendant Hawkins will admit that she conducted a strip search of Plaintiff, conduct that she was ultimately reprimanded for by the St. Louis Metropolitan Police Department's Internal Affairs Division.  Ms. Robinson will testify that, contrary to Defendant Hawkins' position, she was actually subjected to a body cavity search which numerous police department personnel will testify was in violation of department policy. The evidence will show that, regardless of whether the search was a strip or body cavity search, it was unconstitutional because it was unjustified and conducted in an unreasonably humiliating and intimidating manner.

Specifically, the vehicle stop which lead to the strip search of Plaintiff was based upon a municipal ordinance violation. Furthermore, the evidence will show that, despite thoroughly patting Plaintiff down, Defendant Hawkins decided to conduct a strip search of Plaintiff based on the completely unrealistic and unreasonable assertion that she was

---

[35] *Robinson,* 937 F.3d at 1138.
[36] *Id.* (internal citations omitted).
[37] *Id.*
[38] *Id.*

concerned Plaintiff might have hidden a weapon in her vagina. The evidence will show that Plaintiff indeed did *not* have a weapon hidden in her vagina.      Plaintiff      also maintains that the evidence will show that the search was conducted in an unreasonably humiliating and intimidating manner, as Defendant Hawkins used threatening and offensive language and physical force before and during the search. Defendant Hawkins dragged Plaintiff, whose feet were bare and hands cuffed behind her back, into a nearby parking lot.

The evidence will also show that Defendant Hawkins refused Plaintiff's repeated requests to strip-search her at the police station, and instead, conducted the strip search in the parking lot in the presence of at least one male police officer. The evidence will further show that Defendant Hawkins threw Plaintiff against a dirty or greasy tractor trailer in the parking lot; pulled down Plaintiff's pants and underwear; placed her hand between Plaintiff's bare legs; and touched Plaintiff's vagina and buttocks with her hand – all behind the tractor trailer in the presence of at least one male police officer.

After being arrested on charges that were, ultimately, not filed by the St. Louis Circuit Attorneys' Office, the evidence will show that the police report was prepared by officer Swinton, who was not even on the scene at the time Defendant Hawkins stopped Plaintiff's vehicle and searched Plaintiff. The evidence will show that it was unusual for an investigating officer not to draft his or her own report. Defendant Hawkins did not complete a supplemental report or correct officer Swinton's report.  Additionally, as noted by the *Robinson* court, the evidence will show that there are numerous inaccuracies and omissions from the police report prepared related to the stop and search of Plaintiff.

Specifically, officer Swinton's report does not mention that Defendant Hawkins: escorted Plaintiff to a nearby parking lot; patted Plaintiff down; requested gloves; or unfastened Plaintiff's belt. The report does not mention that Plaintiff was crying hysterically and repeatedly asked to be searched at the police statement. The evidence will show that the report states that Plaintiff was offered but declined the opportunity to reduce a statement to writing. However, the evidence will show that Plaintiff wrote one statement, which was ripped up by officer Swinton, and then wrote another statement, which officer Swinton excluded from the police report.

Respectfully submitted,

HOLLINGSHEAD & DUDLEY

*/s/ Jeremy D. Hollingshead*
Jeremy D. Hollingshead #60447MO
Nicholas J. Dudley #62860MO
7777 Bonhomme Ave., Suite 2401
St. Louis, Missouri 63105
Telephone:   (314) 480-5474
Facsimile:    (314) 594-0825
Email:         jhollingshead@hdtriallawyers.com
                  ndudley@hdtriallawyers.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned counsel certifies that a true and accurate copy of the foregoing was served upon Robert Isaacson, counsel for Defendants, via the Court's CM/ECF electronic notification system on this 23rd day of January, 2029.

*/s/ Jeremy D. Hollingshead*